UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHARLES SCHWAB & CO., INC.,

                      Plaintiff,            **MEMORANDUM & ORDER**
                                                                    11-CV-03755 (DRH) (AKT)
      - against -

MALGORZATA MAKOWSKA,
NORBERT TROKKI, and THE UNITED
STATES OF AMERICA,

                      Defendants.
----------------------------------------------------------------X
**A P P E A R A N C E S :**

**For Plaintiff Charles Schwab & Co., Inc.:**
**BARITZ & COLMAN LLP**
The Woolworth Building
233 Broadway, Suite 2020
New York, New York 10279
By: David S. Richan

**For Defendant The United States of America:**
**KATHRYN KENEALLY**
Assistant Attorney General
Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
By:  Julie C. Avetta, Esq.

**For Defendant Malgorzata Makowska:**
**BLODNICK, FAZIO, & ASSOCIATES, P.C.**
1325 Franklin Avenue, Suite 555
Garden City, New York 11530
By:  Jessica A. Gould, Esq.

**HURLEY, Senior District Judge:**

       This action for interpleader relief against defendants Norbert Trokki ("Trokki"),

Malgorzata Makowska ("Makowska"), and The United States of America ("United States"),

(collectively, "Defendants"), was brought by plaintiff Charles Schwab & Co., Inc. ("Schwab") to determine the rightful owner of proceeds of a Schwab brokerage account ("Account").[1] Presently before the Court are the United States' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Schwab's motion for attorneys' fees and costs. For the reasons set forth below, the United States' motion is granted, and Schwab's motion is denied.

## BACKGROUND

The following facts are taken from the pleadings, the parties' Local Civil Rule 56.1 Statements, and the papers submitted by the parties in connection with the motions.

Makowska and Trokki were parties to a matrimonial action pending before the Supreme Court of New York in Suffolk County, (Am. Compl. ¶ 2.), which, according to Makowska, she commenced on October 14, 2010 after having been married to Trokki for nearly ten years (Makowska Mem. in Opp'n. at 4).[2] On January 19, 2011, the Supreme Court ordered the

---

[1] On February 17, 2011, Schwab commenced this action in the Supreme Court of New York in Suffolk County against Makowska and Trokki for interpleader relief.  On or about July 1, 2011, Schwab filed an Amended Complaint in the Supreme Court naming the United States Department of Treasury as an additional defendant. Thereafter, on August 3, 2011, the United States removed this action to the United States District Court for the Eastern District of New York, noting that Schwab had improperly named and sued the United States Department of Treasury as a defendant when the United States of America was the proper defendant.

[2] At the time of filing of this motion, Trokki and Makowska's matrimonial action was pending before the Supreme Court.  However, on November 12, 2013, upon consent of all parties, Makowska filed a motion to amend her Memorandum of Law in Opposition to Summary Judgment, [Docket No. 48], requesting the Court to supplement the record and take judicial notice of an Amended Judgment of Divorce and an Amended Findings of Fact and Conclusions of Law which were entered by the Supreme Court on September 30, 2013.  The Amended Judgment of Divorce expressly supersedes and amends the Judgment of Divorce that was previously entered by the Supreme Court on July 8, 2013.  Similarly, the Amended Findings of Fact and Conclusions of Law expressly supersedes and amends the Findings of Facts and Conclusions of Law previously issued by the Supreme Court on June 26, 2013.  The Court hereby takes judicial notice of the Amended Judgment of Divorce and Amended Findings of Fact and Conclusions of Law that were entered by the Supreme Court on September 30, 2013.  *See Galin v. United States*, 2008 WL 5378387, at *6 (E.D.N.Y. Dec. 23, 2008) (stating that a judgment rendered in another court is a "public document[] subject to judicial notice").  Additionally, the Court observes that the Amended Judgment of Divorce and Amended Findings of Fact and Conclusions of Law, as well as the prior Judgment of Divorce and

sequestration of certain of Trokki's properties, including property in accounts held by Schwab, and appointed Makowska temporary receiver of said property (the "Sequestration Order"). (Am. Compl. ¶ 8.) Makowska subsequently "requested that certain disbursements be made to her from . . . Trokki's Schwab Account." (*Id.* ¶ 9.) However, Schwab alleges that because its "obligations to [Trokki and Makowska] under the terms of the [Sequestration Order are] ambiguous and unclear, any disbursement of or failure to disburse assets from the Account could expose Schwab to liability to either [Trokki or Makowska]." (*Id.*)

It is undisputed that Trokki is indebted to the United States "for unpaid federal tax liabilities for the income tax year ending December 31, 2010." (United States R. 56.1 Stmt. ¶ 5.) On May 30, 2011, the United States "made an assessment of tax liabilities against . . . Trokki" and, on July 1, 2011, the United States filed a Notice of Federal Tax Lien with the Suffolk County Clerk reflecting Trokki's tax liabilities. (*Id.* ¶ 6.) Thereafter, "on June 10, 2011[,] the United States served a Notice of Levy on [Schwab] identifying [Trokki's Account] as a source of funds."[3]  (*Id.* ¶ 7.)

Since Schwab was "unable to ascertain the true and correct ownership of the . . . assets or the right to manage, control and disburse funds from the Account," Schwab commenced the present interpleader action "to determine the rightful owner of the proceeds of the Account." (Am. Compl. ¶ 11.) Schwab paid the disputed funds from the Account into court custody

---

Findings of Facts and Conclusions of Law, were entered after the United States' assessment of tax liabilities against Trokki on May 30, 2011 and filing of a Notice of Federal Tax Lien reflecting Trokki's tax liabilities with the Suffolk County Clerk on July 1, 2011, as discussed *infra* in the text.

[3] As of August 30, 2012, Trokki's debt to the United States totaled $478,238.59. (United States R. 56.1 Stmt. ¶ 5.)

3

("Interpleader Fund"). (United States R. 56.1 Stmt. ¶ 2.) The Interpleader Fund amounts to $569,063.61. (*Id.* ¶ 1.)

Since its creation, Trokki was the sole account holder of the Account. (*Id.* ¶ 10.) Makowska was never an account holder of the Account nor did she have the right to make withdrawals from the Account. (*Id.* ¶ 11.) "All of the money contributed to the [A]ccount consisted of . . . Trokki's personal funds" and "Makowska did not contribute any of her personal funds to the account." (*Id.* ¶¶ 12, 13.)

## DISCUSSION

### I. *The United States' Motion for Summary Judgment*

#### A. *Summary Judgment Standard*

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or

other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

5

### B. *The Federal Tax Lien on Trokki's Property*

The United States asserts that a federal tax lien in its favor attached to Trokki's property and rights to property, including Trokki's Account. (Mem. in Support of Summ. J. at 4.) The United States further asserts that because "Makowska neither contributed funds to the . . . Account nor had the right to make withdrawals from [the Account], the [A]ccount is appropriately included in . . . Trokki's property, to which the federal tax lien attached." (*Id.*)

As a preliminary matter, the Court notes that "Makowska does not, in any way, dispute the tax liability or the lien which the [United States] has assessed against Trokki, nor does she deny [the United States'] right to seek enforcement of same against [Trokki's] assets." (Mem. in Opp'n. at 11.) However, Makowska argues that only a portion of the Interpleader Fund consists of Trokki's assets, and that she has an interest in the Interpleader Fund that is superior to the United States' interest. (*Id.*) Accordingly, the Court will address Makowska's interest, if any, in the Interpleader Fund.

### C. *Makowska's Claimed Interest in the Interpleader Fund*

The United States asserts that Trokki was the sole account holder of the Account since its creation, and that Makowska was never an account holder of the Account, nor did she have the right to make withdrawals from the Account. (United States R. 56.1 Stmt. ¶¶ 10, 11.) The United States further asserts that "[a]ll of the money contributed to the [A]ccount consisted of . . . Trokki's personal funds" and "Makowska did not contribute any of her personal funds to the [A]ccount." (*Id.* ¶¶ 12, 13.) Thus, it is the United States' position that there are only two ways in which Makowska could otherwise claim an interest in the Interpleader Fund: 1) as an equitable interest acquired pursuant to New York law as a result of her marriage to Trokki; or 2)

6

as an interest acquired pursuant to a final judgment of divorce. (Mem. in Supp. at 5.)

Makowska "adopt[ed] and affirm[ed]" the United States' Statement of Material Facts, including the United States' statements that Makowska was never an account holder of the Account, did not have the right to withdraw from the Account, and did not contribute any of her personal funds to the Account, and that only Trokki's personal funds were contributed to the Account. (Mem. in Opp'n. at 4.) Nonetheless, Makowska claims that she has an interest in the Interpleader Fund because the Account was "*opened during the marriage with marital savings.*"[4] (*Id.* at 10.) Makowska argues that because marital savings were commingled with Trokki's personal property in the Account, the commingled funds that were in the Account and subsequently transferred to the Interpleader Fund are deemed marital property in which Makowska maintains an interest. (*Id.* at 10-11.) Moreover, Makowska argues that, contrary to the United States' assertions, Makowska's interest in the Interpleader Fund is not inchoate, but, rather, "is a marital asset which will become an 'ownership interest' upon the rendering of the forthcoming Judgment of Divorce." (*Id.* at 12.)

However, contrary to Makowska's arguments, "New York state law does not create any interest in marital property prior to a judgment dissolving the marriage." *United States v. Butler*, 2013 WL 6150774, at *1 (2d Cir. Nov. 22, 2013). In the case *Musso v. Ostashko*, 468 F.3d 99 (2d Cir. 2006), the Second Circuit made it clear that, under New York law, an equitable interest

---

[4] Makowska's argument, which asserts that she has an interest in the Interpleader Fund because the Account was opened during the marriage with marital savings, is seemingly contradictory to her agreement with the United States' statement that "[a]ll of the money contributed to the [A]ccount consisted of . . . Trokki's personal funds." (United States R. 56.1 Stmt. ¶ 12.) Nevertheless, as discussed *infra*, it is irrelevant to the outcome of this motion whether the Account consisted solely of Trokki's personal funds or instead commingled marital and personal funds.

7

in property is not obtained merely because property can be categorized as marital property. *Id.* at 105. "Nor do rights vest . . . upon the commencement of a matrimonial action." *Id.* Instead, New York Domestic Relations Law ("DRL") § 236(B)(5)(a) provides that the rights of parties to a matrimonial action in their separate or marital property is determined upon the final judgment of divorce. *Id.*; *see also Kaplan v. Kaplan*, 82 N.Y.2d 300, 305 (1993) (stating that "a *former* spouse . . . acquire[s] an independent ownership interest in any 'marital property' acquired during the marriage") (emphasis added); *Sinha v. Sinha*, 285 A.D.2d 801, 803 (3d Dep't 2001) ("conclud[ing] that, because the parties' respective rights in their marital property could not be determined unless and until [the] Supreme Court granted a divorce . . . , [the wife] had no basis under New York law to assert a claim against the marital property prior to divorce") (citing DRL § 236(B)(5)(a)). Thus, "under New York law, one spouse's rights in marital property owned by the other are inchoate and do not vest until entry of a judgment of divorce." *Taub v. Adams*, 2010 WL 8961434, at *10 (E.D.N.Y. Aug. 31, 2010) (quoting *In re DiGeronimo*, 354 B.R. 625, 637 (Bankr. E.D.N.Y. 2006)) (internal quotation marks omitted). As the Second Circuit in *Musso* explained, "[a] spouse without legal title has no interest in marital property prior to obtaining a judgment creating such an interest, for the concept of marital property only exists 'as an ancillary remedy to the dissolution of a marriage.' " *Id.* at 105-06 (quoting *Leibowits v. Leibowits*, 93 A.D.2d 535, 541 (2d Dep't. 1983) (O'Connor, J., concurring)).

Here, it is undisputed that the United States made an assessment of tax liabilities against Trokki on May 30, 2011, and filed a Notice of Federal Tax Lien reflecting Trokki's tax liabilities with the Suffolk County Clerk on July 1, 2011, thereby attaching its lien. *See* 26 U.S.C. § 6322 (providing in relevant part that the lien "arise[s] at the time the assessment is made"); *Galin*,

2008 WL 5378387, at *8 (stating that a "federal tax lien takes root at the time the tax liability is assessed"). It is also undisputed that the United States served a Notice of Levy on Schwab on June 10, 2011, which identified the Account as a source of funds. Furthermore, a final judgment of divorce had not been entered by the Supreme Court prior to the time the federal tax lien attached to the Account. Accordingly, since a judgment of divorce dissolving Makowska's marriage to Trokki and determining her rights, if any, in the Account, had not been entered by the Supreme Court prior to the time the federal tax lien attached to the Account, Makowska's assertion that she has an interest in the Interpleader Fund as a marital asset that is superior to the United States' tax lien fails as a matter of law.

Makowska's additional arguments do not alter the result. Although Makowska argues that her interest or "share" in the Account was "held as a 'constructive trust' on her behalf by Trokki and/or . . . Schwab," (Mem. in Opp'n. at 17), the case law Makowska cites in support of this proposition is distinguishable. Makowska cites the cases *Musso*, 468 F.3d 99, and *Darling v. Darling*, 22 Misc. 3d 343 (Sup. Ct. 2008), to support her contention that her interest in the Account as marital property is analogous to a constructive trust. However, *Musso* and *Darling* analogize an equitable distribution award resulting from a final divorce judgment to a constructive trust. *See Musso*, 468 F.3d at 105 (stating that "an equitable distribution *award* is similar to the imposition of a constructive trust") (emphasis added); *Darling*, 22 Misc. 3d at 354 (quoting *Musso*, 468 F.3d at 105) (same). Since a final divorce judgment containing an equitable distribution award was not rendered by the Supreme Court prior to the attachment of the federal tax lien, Makowska's argument is inapposite.

Makowska's argument that "equity and public policy dictate that either Makowska's lien

9

be found superior or, in the alternative, that the lien of the United States be equitably subordinated to that of Makowska," (Mem. in Opp'n. at 13), is likewise unavailing. The gist of Makowska's argument is that because Trokki allegedly depleted the majority of the marital assets, Makowska will "be deprived of any portion of her marital estate" if the Interpleader Fund is distributed to the United States rather than her. (*Id.* at 13-16, 18-19). While the Court is not unsympathetic to Makowska's circumstances and does not condone Trokki's alleged conduct, Makowska's argument does not alter the legal conclusion that her interest in the Interpleader Fund as marital property does not take priority over the federal tax lien. Her argument sounding in public policy is one more suitably addressed to the legislature.

## II.    *Schwab's Motion for Attorneys' Fees and Costs*

### A.  *The Parties' Arguments*

Schwab asserts that, as an innocent and disinterested stakeholder, it is entitled to attorneys' fees and costs in the amount of $23,544.13, which were incurred in bringing the present interpleader action. According to Schwab, it "has no stake in this action, as it was initiated by Schwab merely to resolve conflicting rights and obligations among the defendants." (Pl.'s Mem. in Support of Fees at 3.) Schwab further claims that it "deposited the required funds with the Clerk of the Court on September 27, 2011, and has sought discharge from any and all liability relating to the instant action." (*Id.*)

Makowska and the United States filed limited oppositions to Schwab's motion for attorneys' fees and costs. It is the United States' position that, while it does not dispute Schwab's entitlement to recover the requested fees from the Interpleader Fund, "any such recovery is junior as a matter of law to the federal tax lien secured in the Interplead[er] Fund."

10

(United States' Mem. in Opp'n. to Fees at 1.) Makowska similarly agrees that Schwab is entitled to recover the requested fees from the Interpleader Fund, but "objects to any allegation that she is responsible, in any way, for the legal fees incurred by [Schwab]," and "asserts that her claim is superior to any claim made by [Schwab] by virtue of her interest and claim" to the Interpleader Fund. (Makowska's Mem. in Opp'n. to Fees at 1-2.) According to Makowska, the "interpleader action was wrongfully commenced by [Schwab]" because the Supreme Court issued an Order that designated Makowska the receiver of the Account. (*Id.* at 2-3.) In addition, Makowska disputes the amount of attorneys' fees and costs sought by Schwab, arguing that Schwab's "legal invoices show excessive billings." (*Id.* at 3.)

### B. *Schwab's Entitlement to Attorneys' Fees and Costs*

Schwab requests attorneys' fees and costs in the amount of $23,544.13, which Schwab contends it incurred in bringing the present interpleader action. As a preliminary matter, the Court notes that Schwab cites *Landmark Chemicals, SA v. Merrill Lynch & Co.*, 234 F.R.D. 62 (S.D.N.Y. 2005), *Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173 (S.D.N.Y. 2002), and *Estate of Ellington v. EMI Music Publ'g*, 282 F. Supp. 2d 192 (S.D.N.Y. 2003), in support of its claim that it is entitled to attorneys' fees as an innocent stakeholder. (Mem. in Support of Fees at 3.) However, those cases involve interpleader actions brought pursuant to Rule 22 of the Federal Rules of Civil Procedure and/or the Federal Interpleader Act, 28 U.S.C. §§ 1335, 1397, and 2361. *See Landmark*, 234 F.R.D. at 63 (involving claim for attorneys' fees and costs pursuant to Rule 22); *Ellington*, 282 F. Supp. 2d at 192 (involving claim for attorneys' fees and costs pursuant to Rule 22 and Federal Interpleader Act); *Fidelity Brokerage*, 192 F. Supp. 2d at 174 (involving interpleader action brought pursuant to Rule 22

11

and the Federal Interpleader Act). The instant interpleader action, on the other hand, was brought by Schwab in the Supreme Court pursuant to Civil Practice Law and Rules ("CPLR") § 1006, and removed to this Court by the United States pursuant to 28 U.S.C. §§ 1442(a)(1) and 1444, and, therefore, does not seek relief pursuant to either Rule 22 or the Federal Interpleader Act, but, rather, pursuant to CPLR § 1006.

CPLR § 1006(f), entitled "Discharge of stakeholder," provides, in relevant part, that "[a]fter the time for all parties to plead has expired, the stakeholder may move for an order discharging him from liability in whole or in part to any party" and "[t]he court shall impose such terms relating to payment of expenses, costs and disbursements as may be just and which may be charged against the subject matter of the action." Thus, Schwab's application for attorneys' fees and costs is apparently premature as Schwab has not moved for an order discharging it from liability. *See also Lincoln Life and Annuity Co. of N.Y. v. Caswell*, 31 A.D.3d 1, 11-12 (1st Dep't 2006) (McGuire, J., concurring) ("A determination that the stakeholder properly brought the interpleader action and should be discharged from liability in whole or in part . . . is a necessary . . . condition for an award of costs, disbursements and reasonable attorneys' fees under CPLR 1006(f)."); *Fischbein, Badillo, Wagner v. Tova Realty, Co.*, 193 A.D.2d 442, 444-45 (1st Dep't 1993) (stating that "the court has discretion to award expenses, costs and disbursements 'as may be just' to the stakeholder upon discharge") (quoting CPLR 1006(f)).[5] Although the Court is aware that Schwab ultimately wishes to be discharged from liability, as evidenced by the complaint which provides in its "wherefore" clause that

---

[5] Notably, Makowska challenges the propriety of Schwab's bringing this interpleader action. (Makowska's Mem. in Opp'n. to Fees at 2.)

Schwab requests an Order relieving it "from any further obligation to the defendants, and ordering the defendants to resolve their claims and contentions with respect to the [Interpleader Account] without further involving Schwab," Schwab has not made a formal application for such relief. Accordingly, the Court will not address the issue of attorneys' fees and costs until a determination has been made that Schwab has properly brought this action and should be discharged from liability.

Parenthetically, while the Court reserves decision on Schwab's entitlement to attorneys' fees and costs, it notes that the United States' interest in the Interpleader Fund is superior to any claimed interest in the Interpleader Fund by Schwab for its attorneys' fees and costs as a matter of law. As discussed fully, *supra*, the United States' interest in the Interpleader Fund is superior to Makowska's. Moreover, "[t]he stakeholder of an interpleaded fund is not entitled to attorney's fees to the extent that they are payable out of a part of the fund impressed with a federal tax lien." *Spinks v. Jones*, 499 F.2d 339, 340 (5th Cir. 1974) (citations omitted); *see also United States v. State Nat'l Bank*, 421 F.2d 519, 521 (2d Cir. 1970) ("hold[ing] that a disinterested bank-stakeholder is not entitled to attorney's fees from a fund when the total amount in the fund is insufficient to satisfy prior federal tax liens").

While the law is well settled that a prior federal tax lien has priority over a stakeholder's subsequent claim for attorneys' fees and costs, this case involves a federal tax lien filed after the commencement of the interpleader action. Subsequent to Schwab's commencement of the instant interpleader action in the Supreme Court on February 17, 2011, the United States made an assessment of tax liabilities against Trokki on May 30, 2011, and filed a Notice of Federal Tax Lien on July 1, 2011. Nevertheless, a stakeholder's attorneys' fees and costs may not be

13

awarded against a fund to which the United States asserts a right, even if the United States' claim is not paramount. *See Spinks*, 499 F.2d at 340 (disallowing an award of attorneys' fees where they were payable from a part of the fund impressed with a prior federal tax lien, even though the prior federal tax lien was not the paramount claim).

In addition, because any claim for attorneys' fees and costs was inchoate prior to the filing of the present motion, the federal tax lien has priority. In *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88-89 (1963), the Supreme Court analyzed the priority of federal tax liens over a state lien for attorneys' fees earned in an action that was filed prior to the recording of the federal tax liens. The Court reasoned that the lien for attorneys' fees was inchoate, and, therefore, did not take priority over the federal tax liens, because "the amount of the lien for attorney's fees was undetermined and indefinite when the federal tax liens in question were filed," and because the attorneys' fees "had not been reduced to a liquidated amount." *Id.* at 90. Guided by the Supreme Court's reasoning in *Pioneer American*, the Court finds that at the time notice of the federal tax lien was filed on July 1, 2011, any claim by Schwab for attorneys' fees and costs relating to this interpleader action was undetermined and indefinite, and, therefore, was inchoate. Thus, the United States' federal tax lien has priority over both Schwab's and Makowska's claims to the Interpleader Fund.

While the priority of the United States' tax lien is clear, there remains the issues of whether Schwab's interpleader action was appropriate and necessary given that the action was commenced after the issuance of the Supreme Court's Order but prior to the existence of the federal tax lien, whether Schwab may recover attorneys' fees and costs from Makowska's share of the Interpleader Fund, and whether the attorneys' fees and costs Schwab seeks are reasonable

14

and appropriate. Neither Schwab nor Makowska has provided the Court with adequate assistance in determining these issues upon the present motion. For example, without citing to legal authority or providing comprehensive arguments, Makowska merely asserts that "her claim is superior to any claim made by [Schwab]," that the "interpleader action was wrongfully commenced by [Schwab]," and that Schwab's "legal invoices show excessive billings." (Makowska's Mem. in Opp'n. to Fees at 2-3.) Similarly, without citing to legal support or providing comprehensive arguments, Schwab asserts that, contrary to Makowska's assertions, it "had no choice but to initiate this interpleader action" because its "obligations to each of the defendants under the terms of the [Supreme Court's] Order. . . were ambiguous and unclear," that its "fees are more than reasonable," and that it "will respectfully defer to the Court's discretion as to whose portion of the Funds bears Schwab's fees and expenses."[6] (Reply in Support of Fees at 2-3.) These bald assertions, without more, would provide little guidance to the Court in determining whether Schwab's interpleader action was appropriate and necessary, whether Schwab may recover attorneys' fees and costs from Makowska's share of the Interpleader Fund, and whether the attorneys' fees and costs Schwab seeks are reasonable and appropriate, were the Court to make such determinations at this time. Based upon the foregoing, the Court denies, without prejudice to renew, Schwab's motion for attorneys' fees and costs.

---

[6] Schwab's moving papers do not provide any further enlightenment as to exactly why Schwab's obligations were ambiguous and unclear under the Supreme Court's Order.

## *CONCLUSION*

For the reasons stated above, the United States' motion for summary judgment is granted, and it is hereby ordered that the balance due on Trokki's federal tax liabilities be distributed from the Interpleader Fund to the United States. Schwab's motion for attorneys' fees and costs is denied without prejudice to renew.

**SO ORDERED.**

Dated: Central Islip, New York
       March 3, 2014

                                                    /s/
                                            Denis R. Hurley
                                            United States Senior District Judge

16